IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DISTRICT

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA. | PLAINTIFF |
| VS. | CIVIL ACTION NO. 3:13-CV-342-DPJ-FKB |
| WILLIAM S. WARE AND PAUL G. BERNHEIM, JR. | DEFENDANTS |

**MOTION FOR PRELIMINARY INJUNCTION REQUIRING INDEMNITORS TO POST COLLATERAL DURING PENDENCY OF THIS ACTION**

Pursuant to Federal Rule of Civil Procedure 65, Travelers Casualty and Surety Company of America ("Travelers"), files this Motion for Preliminary Injunction Requiring William S. Ware and Paul G. Bernheim, Jr., ("Ware" and "Bernheim" respectively) to Post Collateral During the Pendency of this Action and in support thereof states the following:

1. For the reasons set forth in Travelers's Memorandum in Support of its Motion for Preliminary Injunction Requiring Indemnitors to Post Collateral During the Pendency of this Action, Travelers requests the following relief:

    (a) That a preliminary injunction be issued requiring Ware and Bernheim to post collateral in the amount of not less than $2,060,433.50.

    (b) That the Court order such other general and/or equitable relief as the Court deems proper to protect Travelers's rights under the indemnity agreement at issue in this civil action.

2. Travelers requests that this matter be heard on an expedited basis.

WHEREFORE, PREMISES CONSIDERED, Travelers seeks a preliminary injunction compelling William S. Ware and Paul G. Bernheim, Jr., to provide Travelers with cash in the amount of $2,060,433.50.

This, the 26th day of June, 2013.



1

{JX061383.1}

Respectfully submitted,

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA

By Its Attorneys,

JONES WALKER LLP

By:   /s Bradford C. Ray
      Bradford C. Ray

Mark D. Herbert (MSB No. 2370)
Bradford C. Ray (MSB No. 101180)
JONES WALKER LLP
190 East Capitol Street, Suite 800 (39201)
Post Office Box 427
Jackson, Mississippi  39205-0427
Telephone (601) 949-4820
Telecopy (601) 949-4804

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DISTRICT

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA | PLAINTIFF |
| VS. | CIVIL ACTION NO. 3:13-CV-342-DPS-FKB |
| WILLIAM S. WARE AND PAUL G. BERNHEIM, JR. | DEFENDANTS |

MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION REQUIRING INDEMNITORS
TO POST COLLATERAL DURING PENDENCY OF THIS ACTION

Travelers Casualty and Surety Company of America ("Travelers") submits it Memorandum in Support of Motion for Preliminary Injunction Requiring Indemnitors to Post Collateral During Pendency of this Action against William S. Ware ("Ware") and Paul G. Bernheim, Jr., ("Bernheim") and in support thereof states the following:

I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT

The instant civil action involves a federal construction project between the U.S. Army Corps of Engineers ("Corps"), as owner, and U.S. Coating Specialties & Supplies, LLC ("U.S. Coating"), as general contractor, for the Corps Engineer Research and Development Center ITL Office Building and Computer Facility in Vicksburg, Mississippi (the "Project"). As required by the Miller Act (40 U.S.C. §§ 3131 *et seq.*), U.S. Coating provided payment and performance bonds written by Travelers. Because U.S. Coating did not have the financial wherewithal to obtain surety credit from Travelers, the payment and performance bonds were provided based upon the credit and indemnity obligations of Mid State Construction Company, Inc. ("Mid State") and its principals, Ware and Bernheim. Those obligations require Mid State, Bernheim and Ware to, among other things, collateralize any Loss or anticipated Loss upon demand,

1

{JX061385.1}

meaning they must provide Travelers, jointly and severally, with sufficient funds to satisfy the loss. Travelers has made demand upon Bernheim and Ware, to no avail.

Travelers continues to incur additional loss, costs and expenses and may incur additional damages as there are numerous issues outstanding that will impact Travelers's damages sought against Ware and Bernheim, including, but not limited to the Corps' reservation of its right to pursue Travelers for liquidated damages, actual damages, fees, etc. *See* Exhibit "A". The Project is not set to be complete until, at the earliest March 2014, and Travelers does not know to the extent to which the Corps will make additional demands upon Travelers. Additionally, Travelers is currently defending three (3) other lawsuits brought by payment bond claimants. Travelers anticipates that it will incur attorneys' fees and may be required to pay additional sums pursuant to the payment bond.

Travelers brings this motion requesting that the Court issue a preliminary injunction ordering Ware and Bernheim to:

a) post collateral in the amount of $2,060,433.50 representing an amount sufficient to cover the losses Travelers has sustained to date, including, but not limited to, under the payment bond, performance bond and for attorneys' fees, and other costs and expenses;

b) Travelers requests that the collateral posted be submitted to Travelers in cash to be held pending the outcome of this litigation.

## II. FACTS

On July 28, 2009, in consideration of Travelers agreement to issue payment and performance bonds, Ware and Bernheim, along with their company, Mid State, signed a General Agreement of Indemnity ("Mid State GAI") in favor of Travelers. *See* Exhibit "B". On March 31, 2010, Ware advised Travelers that Mid State was partnering with U.S. Coating to submit a

proposal for the Project, and Ware, on behalf of Mid State, stated that any bonds issued by Travelers for the Project would be covered by the GAI. *See* Exhibit "C".

On June 21, 2010, U.S. Coating entered into an $13,613,000 contract (the "Contract") with the Corps for the construction of a building to house sophisticated computer equipment known as the ERDC ITL Office Building and Computer Facility Construction project in Vicksburg, Mississippi (the "Project"). As required by the Miller Act, Travelers provided payment and performance bonds (the "Bonds") on behalf of U.S. Coating. Because U.S. Coating did not have sufficient financial wherewithal, Travelers issued the Bonds in reliance upon the bonding credit and indemnity obligations of Mid State and its principals, Ware and Bernheim. *See* Exhibits "B", and "C".

In furtherance of its business arrangement with U.S. Coating, Mid State entered into several contractual agreements with U.S. Coating, the first of which was the June 23, 2010 Agreement Regarding Bonding Credit[1] whereby Mid State agreed to extend its bonding credit to U.S. Coating and to serve as a major subcontractor for the Project. *See* Exhibit "D". Under the Agreement Regarding Bonding Credit, the following provisions are relevant:

- Mid State, through its principals Ware and Bernheim, loaned its bonding capacity to U.S. Coating so that U.S. Coating could obtain the prime contract for the Project by providing the Bonds.

- Mid State has acknowledged that Travelers provided the Bonds in reliance on the indemnity agreements of Mid State, Ware and Bernheim.

- As consideration a major portion of the work was to be subcontracted to Mid State at which time Mid State requested Travelers to issue the Bonds.

*See* Exhibit "D".

---

[1] U.S. Coating and Mid State also executed an Amended and Restated Agreement Regarding Bonding Credit on November 18, 2010, supplementing the original June 23, 2010 Agreement.

Pursuant to the GAI (Exhibit "B"), Ware and Bernheim agreed to, among other things, the following:

> *Indemnitors shall exonerate, indemnify and save [Travelers] harmless from and against all Loss.* An itemized, sworn statement by an employee of [Travelers], or other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability. Amounts due to [Travelers] shall be payable upon demand.

*See* Exhibit "B" at ¶ 3 (emphasis added).

> **Collateral Security**: *Indemnitors agree to deposit with [Travelers], upon demand, an amount as determined by [Travelers] sufficient to discharge any Loss or anticipated Loss* . . . Sums deposited with [Travelers] pursuant to this paragraph may be used by [Travelers] to pay such claim or be held by Company as collateral security against any Loss or unpaid premium on any Bond. [Travelers] shall have no duty to invest, or provide interest on, the deposit. *Indemnitors agree that [Travelers] would suffer irreparable damages and would not have an adequate remedy as law if Indemnitors fail to comply with the provisions of this paragraph.*

*See* Exhibit "B" at ¶ 5 (emphasis added).

> Loss – All loss and expense of any kind or nature, including attorneys' and other professional fees, which [Travelers] incurs in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of [Travelers's]: (a) making any investigation in connection with any Bond; (b) prosecuting or defending any action in connection with any Bond; (c) obtaining the release of any Bond; (d) recovering or attempting to recover Property in connection with any Bond or this Agreement; (e) enforcing by litigation or otherwise any of the provisions of this Agreement; and (f) all interest accruing thereon at the maximum legal rate.

*Id.* at ¶ 1 Definitions.

After beginning work on the Project, U.S. Coating and Mid State became involved in a dispute regarding payment. Arguing that U.S. Coating was not paying for work performed, Mid State, its subcontractors and suppliers left the Project site on June 14, 2011. *See* Exhibit "E".

4

{JX061385.1}

U.S. Coating attempted to recover the Project schedule and perform the work, however, on April 25, 2012, the Corps terminated U.S. Coating's contract and made a claim against the performance bond. *See* Exhibit "F". Thereafter, the Project was rebid in September 2012, and Johnson Construction was awarded the prime contract with the Corps for $11,322,000 and tendered to the Corps on or about December 4, 2012. *See* Exhibit "G" (Exhibit "B" thereto). The amount of Project funds available to offset Johnson Construction's bid were $10,262,538.90 resulting in a loss on the performance bond of $1,059,461. *Id.*[2]

In addition to the loss on the performance bond, Travelers has received approximately thirty-two (32) payment bond claims totaling not less than $3,231,912.45. *See* Exhibit "G". To date, Travelers has paid thirteen (13) of those payment bond claims in an amount not less than $699,572.08. *Id.* Eight (8) of the payment bond claimants, including Mid State itself, have filed lawsuits against Travelers, all in which Travelers has and will continue to incur attorney's fees defending said claims. *Id.* To date, Travelers has incurred not less than $297,503.50 in attorney's fees and not less than $3,896.92 in costs defending its interests in those lawsuits. Travelers' loss, costs, and expenses are continuing to accrue. *Id.*

On December 30, 2012, Travelers demanded Ware and Bernheim to provide collateral pursuant to the collateral security clause in the U.S. Coating GAI and GAI Rider. *See* Exhibit "H". The December 30, 2012 letter, demanded that Ware and Bernheim put Travelers in funds for the losses, costs, and expenses that Travelers had expended to date. *Id.* Ware and Bernheim never responded to the demand for collateral. Based on the losses set forth above, and pursuant to the law below, Travelers requests that the Court grant Travelers's request for injunctive relief

---

[2] Travelers tender of $1,059,461 and Johnson Construction to the Corps made no account for the Corps actual and/or liquidated damages. Though Travelers denies liability for actual and/or punitive damages, Travelers anticipates the Corps will make a demand for actual and liquidated damages when the Project is completed resulting in additional losses for defense costs.

5

{JX061385.1}

and require Ware and Bernheim to provide Travelers with $2,060,433.50 with which to satisfy the losses incurred on the performance and payment bonds.

### III.   LEGAL ARGUMENT

#### A.   Standard for Injunctive Relief.

Section 28 U.S.C. § 1332 confers to district courts "original jurisdiction of all civil actions . . ." including suits in equity. 28 U.S.C. § 1332. Federal courts have consistently recognized that they should exercise their equitable jurisdiction to protect the rights of a surety. "It is well settled that a court of equity will, at the request of a surety, seize funds due its principal and apply them to the principal's debts if the surety can show that: the debts are currently due, the principal is unable or refuses to pay them, and if they are not paid the surety will become liable." *Western Cas. & Surety Co. v. Biggs*, 217 F.2d 163, 165 (7th Cir. 1954) (citing *Morley Construction Co. v. Maryland Cas. Co.*, 300 U.S. 185, 189-190 (1937)); *Great Am. Ins. Co. v. Conart Inc.*, 2006 WL 839197 (M.D. Ga. 2006) (granting surety preliminary injunction in reliance on *Biggs*, the Georgia District Court, specifically stated, "if the preliminary injunction is not granted, Plaintiff [surety] will be forced to continue to use its own funds in defense of the claims against Defendants."); *Travelers Casualty & Surety Co. v. Ockerlund*, 2004 WL 1794915 *5 (N.D. Ill. 2004).

In addressing a surety's request for injunctive relief, courts routinely grant a surety's motion for injunctive relief requiring indemnitors such as Ware and Bernheim to provide the surety with collateral. *See Great American Ins. Co. v. McElwee Bros., Inc.*, 2004 WL 1345120 (5th Cir. 2004); *Hartford Fire Ins. v. Pride Construction*, 2008 WL 2325658 (5th Cir. 2008) (affirming district court's grant of injunctive relief to the surety); *Great American Ins. Co. v. SRS, Inc.*, 2011 WL 6754072 (M.D. Tenn. 2011); *Ins. Co. of the West v. Kuenzi Comm., LLC*, 2009 WL 2731349 (D. Or. 2009); *Int'l. Fidelity Ins. Co. v. Solutions to Every Problem, Inc.*,

6

{JX061385.1}

2012 WL 2576775 (E.D. Tenn. 2012); *Travelers Cas. & Surety. Co. of America v. Southwest Contracting, Inc.*, 2006 WL 276942 (E.D. Mo. 2006); *Safeco Ins. of Am. v. Criterion Inv. Corp.*, 732 F.Supp. 834, 843 (E.D. Tenn. 1989).

In 2008, the Fifth Circuit affirmed the Northern District of Mississippi's decision to require an indemnitor to post collateral in favor of its surety. *Hartford Fire Ins.*, 2008 WL 2325658. Therein, the Fifth Circuit held there was ample evidence of the liability of the indemnitor. *Id.* As set forth below, there is ample evidence of Ware's and Bernheim's liability to Travelers for the losses incurred.

This Court is well familiar with the standard for the granting of preliminary injunctive relief. As set forth in *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974), in order to prevail on a motion for preliminary injunctive relief, Travelers must establish:

1. a substantial likelihood that the plaintiff will prevail on the merits;

2. a substantial threat that the plaintiff will suffer irreparable injury if the injunction is not granted;

3. the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant; and

4. that granting the preliminary injunction will not disserve the public interest.

*See also Hill v. Greene County Sch. Dist.*, 848 F. Supp. 697 (S.D. Miss. 1994).

Under the *Canal* test and the facts, Travelers will demonstrate at a hearing on this matter, injunctive relief is both proper and necessary in this civil action.

### B. Travelers is Likely to Prevail on the Merits.

Under Mississippi law, indemnity agreements are enforced according to their plain and unambiguous terms. *Guarantee Co. of N. Am. v. Pitts*, 30 So. 758 (Miss. 1901); *see also Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (Miss. 2003) (in a contract

7

{JX061385.1}

construction case, a court's focus is upon the objective fact – the language of the contract, and the court should not concern itself with what the parties have said to one another); *Ivison v. Ivison*, 762 So. 2d 329, 335 (Miss. 2000)("'[W]hen a contract is clear and unambiguous, this Court "is not concerned with what the parties may have meant or intended but rather what they said, for the language employed in a contract is the surest guide to what was intended.") Likewise, there is no argument that the GAI is against public policy; accordingly, they must be construed and enforced according to their terms. Addressing indemnity agreements, the Mississippi Supreme Court has stated, "[t]here is nothing wrong or unreasonable, or against public policy, in this stipulation. Parties *suit* [sic] *juris* may lawfully make such stipulations, and are bound by them." *Pitts*, 30 So. 758.

Interpreting the clear and unambiguous language of the GAI, Travelers is likely to succeed on the merits of its claims against Ware and Bernheim. The clear terms are as follows:

> *Indemnitors shall exonerate, indemnify and save [Travelers] harmless from and against all Loss.* An itemized, sworn statement by an employee of [Travelers], or other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability. Amounts due to [Travelers] shall be payable upon demand.

*See* Exhibit "B" at ¶ 3 (emphasis added).

> Loss – All loss and expense of any kind or nature, including attorneys' and other professional fees, which [Travelers] incurs in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of [Travelers's]: (a) making any investigation in connection with any Bond; (b) prosecuting or defending any action in connection with any Bond; (c) obtaining the release of any Bond; (d) recovering or attempting to recover Property in connection with any Bond or this Agreement; (e) enforcing by litigation or otherwise any of the provisions of this Agreement; and (f) all interest accruing thereon at the maximum legal rate.

*Id.* at ¶ 1 Definitions.

8

{JX061385.1}

To secure against Loss and anticipated Loss Ware and Bernheim agreed to provide Travelers with collateral upon demand through the following language:

> **Collateral Security**: *Indemnitors agree to deposit with [Travelers], upon demand, an amount as determined by [Travelers] sufficient to discharge any Loss or anticipated Loss . . .* Sums deposited with [Travelers] pursuant to this paragraph may be used by [Travelers] to pay such claim or be held by Company as collateral security against any Loss or unpaid premium on any Bond. [Travelers] shall have no duty to invest, or provide interest on, the deposit. *Indemnitors agree that [Travelers] would suffer irreparable damages and would not have an adequate remedy as law if Indemnitors fail to comply with the provisions of this paragraph.*

*See* Exhibit "B" at ¶ 5 (emphasis added).

In upholding a surety's right to pay claims presented to it, the Mississippi Supreme Court held that a surety is "bound only to act without fraud in settling a claim, and, thus paying, is entitled to hold the party guaranteed for reimbursement; and the voucher proves the claim, if not shown to have been infected with fraud." *Pitts*, 30 So. at 759. In interpreting contractual indemnity language similar to the clause in the GAI, the Fifth Circuit held these provisions ". . . although apparently harsh as to an indemnitor, often have been upheld and are not against public policy." *Engbrock v. Fed'l. Ins. Co.*, 370 F.2d 784, 786 (5th Cir. 1967). The *Engbrock* Court further held, "an indemnitor may successfully attack payments made by Surety *only* by pleading and proving fraud or lack of good faith by Surety. But neither lack of diligence nor negligence is the equivalent of bad faith; and improper motive, which is not alleged, is an essential element of bad faith." *Id.* In *First Nat'l Ins. Co. of Am. v. Wunderlich*, 358 F. Supp. 2d 44, 51 (N.D.N.Y. 2004), the court held absent bad faith, fraud or extravagance, the surety is entitled to pay the actual costs incurred in completing the construction project and then be provided indemnification pursuant to the agreement.

Because Ware and Bernheim cannot prove fraud and/or bad faith concerning the losses incurred by Travelers, they are liable under the clear language of the GAI.

Pursuant to the clear language of the GAI, Ware and Bernheim are obligated to indemnify and hold Travelers harmless from and against all loss. *See* Exhibit "B". An itemized sworn statement or other evidence of payment supports the claim and is prima facie evidence of the propriety, amount and existence of Indemnitors' liability. *See* Exhibit "B" at ¶ 3; *see also Engbrock*, 370 F.2d at 786; *Gundle Lining Constr. Corp. v. Adams County Asphalt*, 85 F.3d 201, 210 (5th Cir. 1996) (court granted summary judgment for surety where the indemnitor could not rebut the surety's prima facie showing of liability under the bond).

Attached hereto is the affidavit of Mrs. Roberta Ziv-Goldstein. *See* Exhibit "G". Mrs. Ziv-Goldstein is responsible for handing the claims made against the payment and performance bonds in issue. Mrs. Ziv-Goldstein testified that Travelers has incurred a loss of not less than $2,060,433.50. *Id.* at ¶ 14. This loss is made up of the performance bond loss to date of $1,059,461, the payment bond loss to date of $699,572.08, and attorneys' fees and costs of $301,400.42. *Id.* at ¶¶ 4, 7 and 11. Also attached to Mrs. Ziv-Goldstein's affidavit are the checks made payable to the payment bond claimants and the check to the Corps for the performance bond loss. *Id.* Not only is Travelers likely to prevail on the merits, the Fifth Circuit has granted summary judgment in favor of the surety on indemnity claims like the claims presented to this Court. *Engbrock*, 370 F.2d at 786; *see also Gundle Lining Constr. Corp.*, 85 F.3d at 210.

C.  **Travelers Will Suffer Irreparable Injury if the Relief is not Granted.**

By executing the GAI, Ware and Bernheim agreed that if they failed to comply with the terms of the collateral security clause that…[Travelers] would suffer irreparable damage and would not have an adequate remedy at law…. *See* Exhibit "B" at ¶ 5. The Court must enforce

this clear and unambiguous provision. *See Great American Ins. Co. v. SRS, Inc.*, 2011 WL 6754072 (M.D. Tenn. 2011) (district court enforced indemnity provision that provided surety would suffer irreparable harm if indemnitor did not comply with collateral security clause).

It must be noted that Ware and Bernheim brought U.S. Coating to Travelers and requested the issuance of payment and performance bonds for the Project as the Project was a business venture between Mid State, a company owned by Ware and Bernheim, and U.S. Coating. Travelers issued the bonds based on Mid State's bonding capacity, and that of its principals Ware and Bernheim, its financial viability at that time, along with Mid State and its principals' indemnity obligations. *See* Exhibits "B" and "C". The collateral security clause was/is an important, negotiated right to ensure Travelers (1) that it would be fully collateralized for losses, (2) that it would be collateralized and protected from losses that might result from insolvency and/or dissipation of assets, (3) motivate indemnitors to resolve outstanding claims, and (4) create a fund from which Travelers may resolve liability for Loss or anticipated Loss. Travelers would not have issued the bonds without the appropriate financial backing, which included collateral security, and Travelers is entitled to the benefit of its bargain.

The collateral security clause is vital in this case since numerous defaults of the GAI have occurred. The relevant defaults include, a default termination of U.S. Coating resulting in a performance bond claim by the Corps, the receipt of thirty-two (32) payment bond claims alleging failure to pay on the part of U.S. Coating and Mid State, U.S. Coating filing for protection under the bankruptcy code, and U.S. Coating dissolving as a business. *See* Exhibit "B". To date, Travelers has incurred not less than $2,060,433.50 in losses under the payment and performance bonds and in attorneys' fees, costs, and expenses. Travelers has demanded Ware and Bernheim provide Travelers with collateral with which to satisfy losses against the

bonds. *See* Exhibit "H". However, they have refused to provide such collateral. Without having collateral with which to satisfy these losses, Travelers will be forced to use its own funds to defend and pay claims, which satisfies the irreparable harm standard. *Ockerlund*, 2004 WL 1794915 *5. Upon this backdrop, it is probable that the denial of the requested injunction will leave Travelers with rights, but no remedy. This is precisely the type of irreparable harm required by law. *Id.*, *see also USF&G v. J. United elec. Contr. Corp.*, 62 F. Supp. 2d 915 (E.D.N.Y. 1999).

In *Ockerlund*, the court reviewed the provisions of an indemnity agreement much like those at issue before this court, including, but not limited to a collateral security clause. The *Ockerlund* court concluded that the surety would suffer irreparable harm if the injunction did not issue as it would be forced to use its own funds to defend and pay claims despite defendants' contractual promises to protect the surety from this risk, and that by granting the injunction the court was only requiring the defendants to perform the obligations they had contractually agreed to undertake. *Ockerlund*, 2004 WL 1794915.

Because Ware and Bernheim have failed and/or refused to comply with Travelers's demand for collateral, Travelers is likely to suffer irreparable harm, and the balance of harm weighs in favor of granting Travelers's requested relief.

### D. The Potential Injury to Travelers Outweighs any Harm to Ware and Bernheim.

In balancing the equities, Travelers prevails. Travelers is merely seeking to enforce its contractual right to collateral security under the GAI. Courts routinely find that the surety's right to collateral satisfies the equities balancing test. *Great American Ins. Co.*, 2011 WL 6754072 *9. Neither Ware nor Bernheim can be heard to argue that they prevail on the equities balancing test because the issuance of an injunction will only require them to do that which they agreed.

Moreover, Ware and Bernheim have already received their benefit of the bargain by receiving multi-million dollar bonds from Travelers that enabled them to receive lucrative contracts regarding the Project.  If the injunction is denied, there is a likelihood that no assets will be available to Travelers with which to satisfy the indemnitors' contractual obligations.  Courts routinely find that denying a surety's demand or request for collateral is a serious harm to the surety.  *Id., see also Solutions to Every Problem, Inc.*, 2012 WL 2576775 *8; *Ockerlund*, 2004 WL 1794915 *5.

On the other hand, if this Court grants the relief requested by Travelers, the parties will be placed in the position that they bargained for at the time of the execution of the GAI.  The Defendants will be required to perform as they contractually agreed to do, Travelers will receive the collateral security to which it is entitled, and the Defendants will assume the financial risk associated with the bonds issued by Travelers.  Consequently, the potential injury to Travelers outweighs any harm to Ware and Bernheim by granting injunctive relief.

### E.    Granting the Motion will not Disserve Public Interest.

The final factor to be weighed is whether granting the requested relief would disserve public interest.  Mississippi law and public policy not only allows but favors indemnity agreements such as the agreements at issue.  *Pitts*, 30 So. 758.  The *Pitts* Court held that if it did not enforce the indemnity agreement, sureties ". . . could not safely do business anything like as cheaply as they do, and to the evident advantage of the parties and of the general public." *Pitts*, 30 So. 758.  Enforcing the GAI serves an important public interest by ensuring the solvency of surety companies, which promotes the surety's ability to provide the required bonding for public works projects.  Indeed, the bonds at issue were required by the Miller Act, and the provisions of the GAI was required as a condition to Travelers's issuance of payment and performance bonds,

13

{JX061385.1}

which were required as a condition to U.S. Coating being accepted as a contractor on the Project. Enforcement is essential to procuring surety bonds on future public projects to guarantee faithful performance of those projects. Granting Travelers the injunctive relief requested serves the public interest in this case.

## IV.  CONCLUSION

For the foregoing reasons, Travelers requests the this Court enter a preliminary injunction requiring Ware and Bernheim to perform their contractual obligations and post collateral in the amount of not less than $2,060,433.50 to be held by Travelers pending the outcome of this civil action.

This, the 26th day of June, 2013.

        Respectfully submitted,

        TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA

        By Its Attorneys,

        JONES WALKER LLP

        By:   /s/ Bradford C. Ray
               Bradford C. Ray

Mark D. Herbert (MSB No. 2370)
Bradford C. Ray (MSB No. 101180)
JONES WALKER LLP
190 East Capitol Street, Suite 800 (39201)
Post Office Box 427
Jackson, Mississippi 39205-0427
Telephone (601) 949-4820
Telecopy (601) 949-4804

{JX061385.1}